IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

WILLIAM POWERS,
MAP MANAGEMENT LLC, and
BLACK WIDOW LLC,

        Plaintiffs,

   v.

FMNOW LLC,
EMCON ASSOCIATES, INC.,
JON MATTEI,
MICHAEL COCUZZA,
MICHAEL MICHOWSKI, and
PATRICIA MOSCARELLI,

        Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiffs William "Marty" Powers, MAP Management LLC, and Black Widow, LLC, by their counsel, Steven M. Hamilton, Esq. and Gillian Dale, Esq. of Hall & Evans LLC, respectfully submit this Complaint and Jury Demand, as follows:

### I. JURISDICTION AND VENUE

1.    Jurisdiction over these claims is conferred upon this Court pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

2.    Venue is proper in this Court as the Employment Agreement underlying this case

was executed in the State of Colorado and Plaintiffs performed their duties under the agreement primarily in the State of Colorado.

## II. PARTIES

3.      Plaintiff William "Marty" Powers resides at 7647 South Datura Circle, Littleton, Colorado 80120. Mr. Powers is a party to the Employment Agreement at issue in this matter.

4.      Plaintiff MAP Management LLC is a Colorado limited liability company with a mailing address of P.O. Box 102048, Denver, Colorado 80250. MAP Management LLC was listed under the Employment Agreement as the recipient of funds paid for Mr. Powers's services.

5.      Plaintiff Black Widow LLC is a Colorado limited liability company with a mailing address of P.O. Box 102048, Denver, Colorado 80250. FMNow LLC made payments related to the Employment Agreement to Black Widow LLC.

6.      Defendant FMNow LLC ("FMNow") is a Colorado limited liability company with a street address of 391 Inverness Parkway, Suite 333, Englewood, Colorado 80112. FMNow is a party to the Employment Agreement at issue in this matter.

7.      Defendant Emcon Associates, Inc. ("Emcon") is a New Jersey corporation with a street address of 74 Brick Boulevard, Suite 102, Brick, New Jersey 08723. Emcon is the parent company of FMNow, and was sufficiently involved in the management and operation of FMNow that the two companies cannot properly be considered separate entities. Mr. Powers performed work directly for Emcon throughout the term of the Employment Agreement, and Emcon paid Mr. Powers his monthly stipend during the latter part of his employment. Emcon manages the server on which FMNow's business is operated, and pays for salaries, expenses, technology, software development, operational consulting, and improvements on behalf of FMNow.

2

Shareholders of Emcon have a significant ownership in FMNow and participate in the day-to-day control and operations of FMNow. As a result, Emcon is responsible for the acts and omissions of FMNow as described herein.

8.      Defendant Jon Mattei is the President of FMNow. Mr. Mattei denied Mr. Powers's repeated requests for payment under the Employment Agreement and for reimbursement of his expenses, and made the decision to terminate Mr. Powers's employment when he requested money from Emcon to pay for expenses incurred. Mr. Mattei's decision to terminate Mr. Powers included his employment with Emcon.

9.      Defendant Michael Cocuzza is co-founder and Chief Executive Officer (CEO) of Emcon. Mr. Cocuzza is a Board Member and significant stockholder of FMNow. Mr. Cocuzza was aware of Mr. Powers's repeated requests for payment under the Employment Agreement and for reimbursement of his expenses, and denied Mr. Powers's request for a loan to allow him to pay his personal expenses while payment from his employer was outstanding. Mr. Cocuzza was involved in the coordination and management of Mr. Powers's activities at Emcon and benefited from the work Mr. Powers completed for Emcon.

10.     Defendant Michael Michowski is co-founder and Chief Administrative Officer (CAO) of Emcon. Mr. Michowski was involved in the coordination and management of Mr. Powers's activities at Emcon and benefited from the work Mr. Powers completed for Emcon.

11.     Defendant Patricia Moscarelli was the Chief Executive Officer and President of FMNow at the time the Employment Agreement was executed, and at the time when Mr. Powers's payments under the Employment Agreement were supposed to start. Ms. Moscarelli personally benefited from Mr. Powers's work when she sold her FMNow ownership stock to Jon

Mattei in 2013. Ms. Moscarelli was aware of outstanding payments due to Mr. Powers but failed in her responsibilities to honor financial commitments as FMNow's CEO.

## III.  FACTUAL ALLEGATIONS

12.     Mr. Powers and FMNow executed the Employment Agreement as of October 15, 2012. [*See* Employment Agreement, 10/15/2012, attached hereto as Exhibit A]. Patricia Moscarelli executed the Employment Agreement on behalf of FMNow. [*See id.*]

13.     Pursuant to the Employment Agreement, Mr. Powers was employed by FMNow as Director and Business Analyst, Industrial Sector, a management position, in addition to facilitating the creation of the industrial market segment, representing the company in engaged contracts, and supporting the selling of its services nationwide. [*See* Ex.A at ¶1.1].

14.     The Employment Agreement's Compensation Plan provided that Mr. Powers's company, MAP Management, LLC, would be paid a stipend of $8,000 per month on or before February 4, 2013, and the Monday of the first full week of each subsequent month. [Ex. A at ¶2.1 and Appendix A]. The Compensation Plan further provided for variable compensation to be paid on a quarterly schedule in the following amounts:

   i.     Employee/MAP Management LLC receives two percent (2%) of quarterly revenue generated by sales supported (software and fulfillment services) excluding SIP addressed below.

   ii.    Strategic Industrial Properties Provision (SIP). A quarterly bonus will be paid to employee based on the Company's achievement of a mark-up percentage above 10 percent (10%). Payments will be made after the receipt of payment by the Company. For markup achieved in access of ten percent (10%) the employee will receive one third (33%) of the exceeded the markup objective.

[Ex. A at Appendix A].

15.     The Employment Agreement provided that Mr. Powers would be entitled to

inclusion in the Employer's then existing medical and dental insurance, if any, after a six-month

initial period. [Ex. A at ¶2.2]

16.     The Employment Agreement provided that Mr. Powers would be eligible to

participate in an Employee Stock Option Program to be established in calendar year 2013. [*Id.* at

¶2.5].

17.     The Employment Agreement provided that it could be terminated by either party

without cause on sixty (60) days' written notice. The Employment Agreement provided that it

could also be terminated for cause, which would be effective immediately upon delivery of

notice. [Ex. A at ¶6.1].

18.     Termination for cause is defined in the Employment Agreement as follows:

> Termination for cause shall include but not be limited to the following: Employee
> charged with a felony in any jurisdiction; Employee falsification of any company
> document or record; Employee conversion of any company property; Employee
> violation of any provision of this agreement with respect to competition, trade
> secret, trade value, solicitation of any company employee, duty of loyalty,
> acceptance of a kick back.

[*Id.*] Although the definition states that it is not limited to the specified infractions, rules of

construction dictate that any offense for which the employee could be terminated for cause

should be at least of comparable seriousness.

19.     The Employment Agreement provided that if it is terminated without cause,

FMNow would continue to pay Mr. Powers for the duration of 12 months earned compensation

on all accounts sold at the date of termination. [*Id.* at ¶6.2]. The Employment Agreement

provided that if it is terminated with cause, FMNow would promptly pay Mr. Powers according

to Appendix A for all Services rendered before the effective date of termination. [*Id.*]

20.     The Employment Agreement provided that any controversy concerning the agreement shall be determined by arbitration upon the initiation of either party, upon notice given in accordance with the Agreement. [*Id.* at ¶7.4]. The parties are to agree on a mediator within twenty days of notice under the Agreement. [*Id.*] The arbitration shall take place in Boulder, Colorado, under the provisions of the Colorado Uniform Arbitration Act. [*Id.*]

21.     The Employment Agreement provided that if any arbitration is commenced in relation to the agreement, the prevailing party shall receive attorneys' fees incurred as part of the arbitration. [*Id.* at §7.10].

22.     Mr. Powers began performing services under the Employment Agreement on its effective date, October 15, 2012.

23.     FMNow did not begin making monthly payments on or before February 4, 2013, as required by the Employment Agreement. Instead, FMNow paid Mr. Powers $4,000 on or about May 9, 2013, $5,000 on or about June 7, 2013, and $5,000 on or about July 23, 2013, for a total of $14,000 out of the $76,000 Mr. Powers was owed between October of 2012 and July 2013.

24.     Throughout the term of the Employment Agreement, Mr. Powers performed services for both FMNow and Emcon, and no effort was made to differentiate the work he performed for each company. Mr. Powers was issued business cards by both FMNow and Emcon, listing his title as Director of Construction Services.

25.     Beginning August 5, 2013, Mr. Powers was placed on the payroll of Emcon and was paid his monthly stipend under the Employment Agreement by Emcon from August 2013 through February 21, 2014.

26.     At no time was Mr. Powers paid any of the variable compensation set forth in the Compensation Plan by either FMNow or Emcon.

27.     Mr. Powers was not provided with medical insurance after the initial six-month period, even though Emcon had in place an employee health insurance plan.

28.     Mr. Powers was never provided with employee stock options.

29.     Beginning January 23, 2014, Mr. Powers repeatedly requested the payments that were owed to him under the Employment Agreement. Mr. Powers was informed at various times during his employment that there was no money in the operation account, but that he would be paid in full and that he had an interest in the company. Emcon continued to pay sales personnel full stipend payments.

30.     FMNow's President, Jon Mattei, said to Mr. Powers numerous times that his word is good and that he keeps his promises to pay. During the time Mr. Powers was not being paid, Mr. Mattei did keep other promises to pay, including the payment of FMNow salespeople and Russian software developers who Mr. Mattei thought had overbilled FMNow.

31.     Despite numerous verbal announcements by Mr. Mattei concerning distribution of a Shareholder's Statement, including one announcement to Mr. Powers within one week of his termination, a Shareholder Statement has never been provided to Mr. Powers.

32.     On February 5, 2014, Mr. Powers submitted expense reports, again requested payment of outstanding compensation under the Employment Agreement, and also reiterated his request that he be given an annual compensation review as outlined in the Employment Agreement.

33.     On February 5, 2014, Mr. Powers sent an email to Michael Cocuzza, the Chief

Executive Officer of Emcon, requesting a loan to cover his mortgage payment, in light of FMNow's failure to reimburse his expenses or pay his outstanding compensation under the Employment Agreement.

34.     Shortly after sending the loan request to Mr. Cocuzza, Mr. Powers had a short meeting with Ward Anderson, FMNow's Chief Financial Officer, concerning the payment request sent earlier that morning. Mr. Anderson reported that he was not aware of the Employment Agreement and that Mr. Mattei would handle the compensation review.

35.     Following the meeting with Mr. Anderson, Mr. Powers went directly to the office of Mr. Mattei to discuss the request for outstanding compensation and a compensation review. Mr. Mattei indicated that the company did not have the money to pay Mr. Powers, but acknowledged that the requested expenses were owed to Mr. Powers.

36.     Shortly thereafter, Mr. Mattei apparently learned about Mr. Powers's request for a loan and called Mr. Powers, asking him "What the fuck are you doing asking Mike Cocuzza for a loan?" and ""What are you doing asking a fucking director for money?" Mr. Powers responded that he had been requesting payment of his expenses from FMNow and received no response, was hemorrhaging money, and needed help. Mr. Mattei informed Mr. Powers that he should "pack [his] fucking shit and get out."

37.     Mr. Mattei followed up with an email indicating that Mr. Powers should leave the company effective that day, that he should leave his access badge with Mr. Mattei, and that they could discuss final compensation later that day.

38.     Mr. Mattei scheduled a meeting with Mr. Powers for February 6, 2014, indicating that Mr. Powers's end date would be February 28, 2014.

39.     FMNow did not have cause to terminate Mr. Powers for requesting payment of wages owed to him under the Employment Agreement, and did not provide 60 days' notice of termination without cause as required under the Employment Agreement.

40.     Because Mr. Powers was terminated without cause, he was owed an additional 12 months of compensation from February 2014 to February 2015, consisting of $96,000 in monthly stipends plus any variable compensation that would have been earned during that period.

41.     Even if FMNow did have cause to terminate Mr. Powers's employment, at a minimum he should have been paid all amounts owed for services rendered prior to the effective date of the termination.

42.     Instead, upon termination, Mr. Powers was paid only the last of his stipend payments from Emcon, through February 21, 2014. He was paid none of the additional stipend amounts that remained outstanding under the Employment Agreement, and none of the variable compensation owed for the entire term of the Employment Agreement.

43.     In March 2014, Emcon paid a portion of the business expenses Mr. Powers had submitted for reimbursement. Mr. Powers has been paid no additional compensation since that time.

44.     On March 6, 2014, through counsel, Mr. Powers provided FMNow and Emcon his demand for unpaid compensation under the Employment Agreement. The demand letter referenced the Colorado Wage Claim Act and demanded that the unpaid wages be paid within 14 days of the date of the letter. The demand letter advised that Mr. Powers intended to pursue arbitration under the Employment Agreement in the event the wages were not paid.

45.     Neither FMNow nor Emcon responded to the demand letter.

46.     On August 29, 2014, Plaintiffs served an Arbitration Demand on all Defendants, including all of the claims for relief described in this Complaint and Jury Demand, as a well as a breach of contract claim. Mr. Mattei and Ms. Moscarelli declined to arbitrate the claims against them. FMNow acknowledged that at least the breach of contract claim was subject to arbitration, but declined to participate in the selection of an arbitrator or to agree to arbitrate all claims in a single proceeding. None of the remaining Defendants provided any response to the Arbitration Demand.

47.     In light of the Defendants' refusal to allow all claims against them to be resolved in the arbitration, Mr. Powers and MAP Management, LLC submitted an Amended Arbitration Demand on FMNow on October 24, 2014, which was limited to the breach of contract claim against FMNow and Emcon. The remaining claims are brought in this proceeding; however, Plaintiffs remain willing to have all of their claims against Defendants resolved in the arbitration proceeding, if Defendants are willing to consent.

## IV.  STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF
**(Violation of Colorado Wage Claim Act Against FMNow and Emcon)**

48.     Claimants incorporate Paragraphs 1 through 47 of this Complaint as though set forth fully herein.

49.     FMNow and Emcon are employers subject to the Colorado Wage Claim Act, C.R.S. §8-4-101 *et seq.*

50.     Pursuant to C.R.S. §8-4-103(1) (a), "[a]ll wages or compensation, other than those

mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments."

51.     FMNow and Emcon did not pay Mr. Powers within ten days of each monthly pay period specified in the Employment Agreement.

52.     Pursuant to C.R.S. §8-4-109(1)(a), "When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately."

53.     FMNow and Emcon did not pay Mr. Powers all wages earned, vested, determinable, and unpaid at the time of his termination in February 2014, in violation of C.R.S. § 8-4-109.

54.     Mr. Powers made a written demand for his non-paid and promised wages to FMNow and Emcon within 60 days after the date of separation pursuant to C.R.S. § 8-4-109(3).

55.     Neither FMNow nor Emcon responded to the demand, and their failure to respond is treated as a tender of no money pursuant to C.R.S. §8-4-110(1).

56.     Mr. Powers is entitled to an award of all unpaid wages under the Employment Agreement, as well as an award of statutory penalties as provided by C.R.S. § 8-4-109(3)(b).

57.     FMNow and Emcon's failure to pay Mr. Powers pursuant to the express terms of the Employment Agreement during or after the term of employment was willful, requiring that

the penalty be increased by 50% pursuant to C.R.S. §8-4-109(3)(c).

58.     Mr. Powers is entitled to an award of attorneys' fees and costs incurred in bringing this action pursuant to C.R.S. §8-4-110(1).

59.     There is no legal distinction between FMNow and its parent company, as acknowledged by Emcon when it began paying Mr. Powers's stipend under the Employment Agreement in August 2013. As a result, Emcon is jointly liable for the violation of the Colorado Wage Claim Act. In the alternative, Emcon was the assignee of all FMNow's rights and obligations under the Employment Agreement, and as such is jointly liable for the violation of the Colorado Wage Claim Act.

<b><u>SECOND CLAIM FOR RELIEF</u></b><br>
<b>(Retaliation Under the Colorado Wage Claim Act Against FMNow and Emcon)</b>

60.     Claimants incorporate Paragraphs 1 through 59 of this Arbitration Demand as though set forth fully herein.

61.     From January 23, 2014, to February 5, 2014, Mr. Powers repeatedly requested payment of his expenses and the compensation owed him under the Employment Agreement.

62.     On the February 5, 2014, shortly after again requesting payment, Mr. Powers was terminated.

63.     C.R.S. §8-4-120 provides: "No employer shall intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate against any employee who has filed any complaint or instituted or caused to be instituted any proceeding under this article or related law or who has testified or may testify in any proceeding on behalf of himself, herself, or another regarding afforded protections under this article."

64.     The filing and instituting requirements of the statute are not read literally, and even the unofficial assertion of rights through complaints at work is protected activity under this statute. ***Boeser v. Sharp***, 2006 U.S. Dist. LEXIS 19374, *14 (D. Colo. Mar. 31, 2006)

65.     Mr. Powers was terminated in retaliation for complaining about the failure to pay his full wages under the Employment Agreement and to reimburse his expenses and for attempting to enforce his rights under the Colorado Wage Claim Act, in violation of C.R.S. §8-4-120.

66.     Mr. Powers has been damaged in the amount of all wages he would have earned had he not been wrongfully terminated.

67.     There is no legal distinction between FMNow and its parent company, as acknowledged by Emcon when it began paying Mr. Powers's stipend under the Employment Agreement in August 2013. As a result, Emcon is jointly liable for the violation of the Colorado Wage Claim Act. In the alternative, Emcon was the assignee of all FMNow's rights and obligations under the Employment Agreement, and as such is jointly liable for the violation of the Colorado Wage Claim Act.

### THIRD CLAIM FOR RELIEF
**(Violation of the Fair Labor Standards Act Against All Defendants)**

68.     Claimants incorporate Paragraphs 1 through 67 of this Arbitration Demand as though set forth fully herein.

69.     FMNow and Emcon are employers within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*

70.     Jon Mattei, Michael Cocuzza, Michael Michowski, and Patricia Moscarelli each

acted directly or indirectly in the interest of FMNow and/or Emcon in relation to their employees and are therefore also employers within the meaning of the FLSA.

71.     Mr. Powers was employed by FMNow, Emcon, Mr. Mattei, Mr. Cocuzza, Mr. Michowski, and Ms. Moscarelli within the meaning of the FLSA from October 2012 to February 2014. *See* 29 U.S.C. §203.

72.     The FLSA requires that all employees within the meaning of the statute be paid the minimum wage, presently set at $7.25 per hour.

73.     For large portions of his employment with FMNow and Emcon, Mr. Powers received no payment for his work, and was therefore not paid the federal minimum wage and was not paid overtime for all hours worked in excess of 40 hours per week.

74.     Pursuant to 29 U.S.C. §216(b) of the FLSA, Mr. Powers is entitled to recover his unpaid minimum wage and overtime pay for the entirety of his employment with FMNow and an equal amount as liquidated damages, as well as his costs and attorneys' fees incurred in connection with this matter.

75.     There is no legal distinction between FMNow and its parent company, as acknowledged by Emcon when it began paying Mr. Powers's stipend under the Employment Agreement in August 2013. As a result, Emcon is jointly liable for the violation of the FLSA. In the alternative, Emcon was the assignee of all FMNow's rights and obligations under the Employment Agreement, and as such is jointly liable for the violation of the FLSA.

### FOURTH CLAIM FOR RELIEF
**(Retaliation Under the Fair Labor Standards Act Against**
**FMNow, Emcon, and Jon Mattei)**

76.     Claimants incorporate Paragraphs 1 through 75 of this Arbitration Demand as

though set forth fully herein.

77.     FMNow and Emcon are employers within the meaning of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*

78.     Jon Mattei acted directly or indirectly in the interest of FMNow and/or Emcon in relation to his employees and is therefore also an employer within the meaning of the FLSA.

79.     From January 23, 2014, to February 5, 2014, Mr. Powers repeatedly requested payment of his expenses and the compensation owed him under the Employment Agreement.

80.     On the February 5, 2014, shortly after Mr. Powers's request for payment, Mr. Mattei terminated Mr. Powers's employment.

81.     Pursuant to 29 U.S.C. §215(a)(3) of the FLSA, it is unlawful to discharge or in any other manner discriminate against any employee because such employee filed a complaint under the statute.

82.     The requirement of filing a complaint is not read literally, and even unofficial or oral assertion of rights through complaints at work are protected. ***Kasten v. Saint-Gobain Performance Plastics Corp.***, 131 S. Ct. 1325, 1329 (2011); ***Conner v. Schnuck Mkts.***, 121 F.3d 1390, 1394 (10th Cir. 1997).

83.     Mr. Powers was terminated in retaliation for complaining about the failure to pay his full wages under the Employment Agreement and to reimburse his expenses, and for attempting to enforce his rights under the FLSA, in violation of 29 U.S.C. §215(a)(3).

84.     Pursuant to 29 U.S.C. §216(b), Mr. Powers is entitled to such legal or equitable relief as may be appropriate to effectuate the purposes of 29 U.S.C. §215(a), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an

additional equal amount as liquidated damages. Mr. Powers is also entitled to recover his costs and attorneys' fees in connection with bringing this action.

85.     There is no legal distinction between FMNow and its parent company, as acknowledged by Emcon when it began paying Mr. Powers's stipend under the Employment Agreement in August 2013. As a result, Emcon is jointly liable for the violation of the FLSA. In the alternative, Emcon was the assignee of all FMNow's rights and obligations under the Employment Agreement, and as such is jointly liable for the violation of the FLSA.

**FIFTH CLAIM FOR RELIEF**
**(Unjust Enrichment Against All Defendants)**

86.     Claimants incorporate Paragraphs 1 through 85 of this Arbitration Demand as though set forth fully herein.

87.     Although Mr. Powers began working for FMNow on the effective date of the Employment Agreement, October 15, 2012, the Employment Agreement provided that his first monthly stipend would become due on or before February 4, 2013.

88.     In light of the "or before" language, Plaintiffs believe the first monthly stipend should have been paid on the first Monday of November, for the prior half-month, and each month after that. However, to any extent the Employment Agreement's reference to February can be read as requiring no monthly payments before that time, Mr. Powers would have worked outside the terms of the Employment Agreement from October 15, 2012, to December 31, 2012.

89.     In the event this time period is not covered by the Employment Agreement, Defendants received the benefit of Mr. Powers's employment during this initial period but did not pay him for his time and effort.

90.     In addition, Mr. Powers incurred unreimbursed expenses throughout the term of the Employment Agreement that Defendants had specifically agreed to reimburse, including computer and phone, totaling $4,250.

91.     Defendants received the benefit of Mr. Powers's incurred expenses throughout the period of his employment, but did not reimburse him for such expenses.

92.     As President and majority shareholder of FMNow, Mr. Mattei received the benefit of any work Mr. Powers may have performed prior to the term of the Employment Agreement, as well as the benefit of Mr. Powers's incurred expenses on behalf of FMNow and Emcon, but refused to pay Mr. Powers for such work and expenses.

93.     As co-founder and CEO of Emcon, and as Board Member and shareholder of FMNow, Mr. Cocuzza received the benefit of any work Mr. Powers may have performed prior to the term of the Employment Agreement, as well as the benefit of Mr. Powers's incurred expenses on behalf of FMNow and Emcon, but took no action to ensure Mr. Powers was paid for such work and expenses.

94.     As co-founder and CAO of Emcon, Mr. Michowski received the benefit of any work Mr. Powers may have performed prior to the term of the Employment Agreement, as well as the benefit of Mr. Powers's incurred expenses on behalf of FMNow and Emocon, but took no action to ensure Mr. Powers was paid for such work and expenses.

95.     As the President and CEO of FMNow between the date of execution of the Employment Agreement and the date of her termination, Ms. Moscarelli received the benefit of any work Mr. Powers may have performed prior to the term of the Employment Agreement, as well as the benefit of Mr. Powers's incurred expenses on behalf of FMNow and Emcon, but did

not act to procure payment for such work from FMNow.

96.     It would be unjust for Defendants to receive the benefit of 2½ months of work by Mr. Powers with no compensation, if such work was not covered by the Employment Agreement, and to receive the benefit of expenses incurred while performing work for FMNow and Emcon without reimbursement of such expenses.

97.     If the first 2½ months of Mr. Powers's work was not covered by the Employment Agreement, Mr. Powers is entitled to payment in the amount of his agreed-upon stipend of $8,000 per month during that time period, as well as any variable compensation earned during that period, and is entitled to reimbursement of $4,250 in unreimbursed expenses incurred on behalf of FMNow and Emcon.

## V.  REQUEST FOR RELIEF

Wherefore, Claimants William Powers, MAP Management LLC, and Black Widow LLC respectfully request that judgment enter in their favor on all claims, and that they be awarded all relief as allowed by law, including, but not limited to:

A.     All amounts owed under the Employment Agreement, including without limitation stipend payments, variable compensation, stock options, and benefits.

B.     Payment for all hours worked, if any, outside of the terms of the Employment Agreement, including any applicable overtime.

C.     Reimbursement of unreimbursed expenses incurred in connection with the Employment Agreement.

D.     Lost wages arising from the retaliatory termination.

E.     Penalties pursuant to C.R.S. §8-4-109(3)(b) and (c).

F.      Liquidated damages pursuant to 29 U.S.C. §§215(a) and 216(b).

G.      Attorneys fees and costs pursuant to the Employment Agreement, ¶7.0, C.R.S. §13-22-221, C.R.S. §8-4-110(1), and 29 U.S.C. §§215(a) and 216(b).

H.      Prejudgment interest.

I.      All such additional relief as the arbitrator deems just and proper.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

Dated this 5th day of November, 2014.

Respectfully submitted,

_____
Steven M. Hamilton, Esq.
Gillian Dale, Esq.
Hall & Evans LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado  80202
(303) 628-3300 phone
(303) 628-3368 fax
hamiltons@hallevans.com
daleg@hallevans.com

**ATTORNEYS FOR
PLAINTIFFS/CLAIMANTS WILLIAM
POWERS, MAP MANAGEMENT LLC,
and BLACK WIDOW LLC**