IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–03006–KMT

WILLIAM POWERS,
MAP MANAGEMENT LLC, and
BLACK WIDOW LLC,

      Plaintiffs,

v.

EMCON ASSOCIATES, INC.,
MICHAEL COCUZZA, and
MICHAEL MICHOWSKI,

      Defendants.

_____

# ORDER

_____

     This matter is before the court on Defendants' "Motion to Dismiss."   (Doc. No. 28 ["Mot."], filed Apr. 24, 2015.)   Plaintiffs have filed a response (Doc. No. 36 ["Resp."], filed May 22, 2015), to which Defendants replied.   (Doc. No. 46 ["Reply"], filed June 5, 2015).

## STATEMENT OF THE CASE

     Plaintiff William Powers entered into an Employment Agreement ("EA") with former Defendant FMNow, LLC ("FMNow") in October 2012.   (Doc. No. 1 ("Am. Comp.") at 4.) Plaintiff Powers was employed as "Director and Business Analyst, Industrial Sector, a management position, in addition to facilitating the creation of the industrial market segment, representing the company in engaged contracts, and supporting the selling of its services

1

nationwide." (*Id.*)   The parties executed the EA in Colorado and it was signed by Plaintiff

Powers and then-FMNow President, Patricia Moscarelli.   (Am. Comp. at 2; Doc. No. 1-1 at 9-10

["EA"].)[1]   With regard to compensation, the EA provided FMNow would pay MAP Management

LLC (Plaintiff Powers' company) a monthly stipend of $8.000.00 per month the first full week

Monday of each month, beginning "on or before February 4, 2013."   (Am. Comp. at 4; EA at 1-2,

11.)   The EA further provided Plaintiff Powers would receive (1) variable compensation on a

quarterly schedule based upon a percentage of quarterly revenue, (2) a quarterly bonus based upon

FMNow's achievement of a mark-up percentage above ten percent, (3) inclusion in FMNow's

medical and dental insurance benefits, if any, after an initial six month period and (4) participation

in an Employee Stock Option Program to be established during 2013.   (Am. Comp. at 4-5; EA at

2, 11.)   The EA also established it could be terminated by either party without cause if they

provide 60 days' written notice and could be terminated with cause effective immediately upon

delivery of notice.   (Am. Comp. at 5; EA at 6.)   Finally, the EA provided if FMNow terminated

the EA without cause, it would continue to compensate Plaintiff Powers "for the duration of 12

months earned compensation on all accounts sold at the date of termination."   (Am. Comp. at 5-6;

EA at 6.)

Plaintiff Powers began working part time for FMNow in September 2012 and full time on

or about the effective date of the EA, October 15, 2012.   (Am. Comp. at 6.)   However, contrary

to the EA, FMNow did not begin making the monthly stipend payments in February 2013.   (*Id.*)

---

1 Plaintiffs submitted a copy of the Employment Agreement with their Complaint.   (Doc. No. 1-1.)

Instead, FMNow made a partial payment in May 2013 and thereafter made only sporadic and partial payments.   (*Id.*)   By July 2013, FMNow had paid only $19,000 of the monthly stipends owed to Plaintiff Powers under the EA.   (*Id.*)   Beginning August 2013, Plaintiff Powers was placed on the payroll of Defendant Emcon and Emcon paid his monthly stipend from August 2013 until his employment was terminated in February 2014.   (*Id.*)   According to Defendants, when Plaintiff Powers was placed on Emcon's payroll, he became an employee of Emcon.   (Mot. at 2.) In spite of repeated requests, at no time did Plaintiff Powers receive the variable compensation that was due under the terms of the EA, nor was he provided with medical insurance after the initial six-month period, even though Emcon had an employee health insurance plan in place.   (Am. Comp. at 10-11.)   He was also never provided employee stock options.   (Am. Comp. at 10.)

On February 5, 2014, Plaintiff Powers sent an email to Defendant Cocuzza, Emcon's CEO, "requesting a loan to cover his mortgage payment, in light of FMNow's failure to reimburse his expenses or to pay his outstanding compensation under the [EA]."   (Am. Comp. at 11.)   On that same date, Plaintiff Powers requested payment of outstanding compensation and requested a compensation review pursuant to the EA.   (*Id.*)[2]   FMNow's Chief Financial Officer, Ward Anderson, informed Plaintiff Powers that he was not aware of the EA and FMNow's president, Mr. Mattei, informed Plaintiff Powers that FMNow did not have the money to pay him.   (*Id.*) Upon subsequently learning Plaintiff Powers had requested a loan from Emcon's CEO, Mr. Mattei

---

2 Plaintiffs do not indicate in their Amended Complaint to whom Plaintiff Powers submitted this request for outstanding compensation but because he coupled it with a request for his outstanding expenses and he indicates in his Amended Complaint that he continued to submit those to FMNow after he was moved to Emcon's payroll, the court infers he submitted this request to FMNow.

terminated his employment, effective February 28, 2014.   (Am. Comp. at 11-12.)   On February

21, 2014, Emcon's Director of Human Resources sent Plaintiff Powers a termination letter, stating

in the cover email: "In accordance with your conversations with Mr. Mattei, attached is an

employment termination letter."   (Am. Comp. at 12.)

By this action, Plaintiffs have asserted claims against Emcon only for breach of contract,

violation of the Colorado Wage Act ("CWA"), retaliation under the CWA and retaliation under the

Fair Labor Standards Act ("FLSA").[3]   (Claims I, II, III and V, respectively.)   Additionally,

Plaintiffs have asserted claims against Emcon, Emcon's Chief Administrative Officer, Defendant

Michowski, and Emcon's Chief Executive Officer, Defendant Cocuzza, for unjust enrichment and

a violation of the FLSA for failure to pay wages.   (Claims IV, VI, respectively.)   Defendants

have moved to dismiss Plaintiffs' claims in their entirety.

## LEGAL STANDARDS

### 1.   *Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss a

complaint for a lack of jurisdiction over the person.   Fed. R. Civ. P. 12(b)(2).   Plaintiffs bear the

burden of establishing personal jurisdiction over Defendants.   *OMI Holdings, Inc. v. Royal Ins.*

*Co.,* 149 F.3d 1086, 1091 (10th Cir. 1998).   In the preliminary stages of litigation, Plaintiffs'

burden is light.   *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).   Where, as here,

---

3 Plaintiffs originally also named FMNow, Jon Mattei and Patricia Moscarelli, former President of
FMNow, as Defendants in this matter.   However, Plaintiff voluntarily dismissed FMNow and
Defendant Mattei on June 3, 2015 and dismissed Defendant Moscarelli, pursuant to a settlement
agreement between the parties, on June 5, 2015.   (Doc. Nos. 40, 42-44.)

there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction is

decided on the basis of affidavits and other materials, Plaintiffs need only make a prima facie

showing that jurisdiction exists.   *Id.*

Plaintiffs have the duty to support jurisdictional allegations in a complaint by competent

proof of the supporting facts if the jurisdictional allegations are challenged by an appropriate

pleading.   *Pytlik v. Prof'l Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989).   The allegations in

Plaintiffs' complaint "must be taken as true to the extent they are uncontroverted by [Defendants']

affidavits."   *Wenz*, 55 F.3d at 1505 (quoting *Doe v. Nat'l Med. Servs.*, 974 F.2d 143, 145 (10th

Cir. 1992)).   If the parties present conflicting affidavits, all factual disputes must be resolved in

Plaintiffs' favor, and "plaintiff[s'] *prima facie* showing is sufficient notwithstanding the contrary

presentation by the moving party."   *Id.* (citation omitted).   Only well-pleaded facts, as opposed

to mere conclusory allegations, must be accepted as true.   *Id.*

To determine whether a federal court has personal jurisdiction over a nonresident

defendant, the court looks to the law of the forum state.   *Taylor v. Phelan*, 912 F.2d 429, 431 (10th

Cir. 1990).   In Colorado, the assertion of personal jurisdiction must both: (1) satisfy the

requirements of the long-arm statute; and (2) comport with due process.   *Id.*; *Doering v. Copper*

*Mountain, Inc.*, 259 F.3d 1202, 1209 (10th Cir. 2001); *Classic Auto Sales, Inc. v. Schocket*, 832

P.2d 233, 235 (Colo. 1992).   Colorado's long-arm statute subjects a defendant to personal

jurisdiction for engaging in - either in person or by an agent - the "commission of a tortious act

within this state," or the "transaction of any business within this state."   Colo. Rev. Stat. §§

13-1-124(1)(a)-(b) (2007).   To comport with due process, a defendant must have minimum

5

contacts with the forum state such that maintenance of the lawsuit would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Colorado's long-arm statute is a codification of the "minimum contacts" principle required by due process. *See Lichina v. Futura, Inc.*, 260 F. Supp. 252, 255 (D. Colo. 1966). Accordingly, under Colorado law, a court may assert jurisdiction to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *See OMI Holdings, Inc.*, 149 F.3d at 1090; *Scheur v. Dist. Ct.*, 684 P.2d 249 (Colo. 1984).

**2.   *Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is

6

liable for the misconduct alleged." *Id*.   The *Iqbal* evaluation requires two prongs of analysis.

First, the court identifies "the allegations in the complaint that are not entitled to the assumption of

truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.

*Id*. at 679-81.   Second, the Court considers the factual allegations "to determine if they plausibly

suggest an entitlement to relief." *Id*. at 681.   If the allegations state a plausible claim for relief,

such claim survives the motion to dismiss. *Id*. at 679.

      Notwithstanding, the court need not accept conclusory allegations without supporting

factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions.   Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.   Moreover,

"[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'   Nor does the complaint suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'" *Id.* (citation omitted).   "Where a complaint pleads

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

      In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the

complaint itself, but also attached exhibits and documents incorporated into the complaint by

reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

"[T]he district court may consider documents referred to in the complaint if the documents are

central to the plaintiff's claim and the parties do not dispute the documents' authenticity."   *Id.*
(internal quotations omitted).

## ANALYSIS

### 1.  Unjust Enrichment

"Unjust enrichment is a form of contract, or quasi-contract, implied by law that does not
rely upon a promise between parties."   *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205
(Colo. App. 2009).   The elements of unjust enrichment are: "(1) at the expense of a plaintiff; (2) a
defendant received a benefit; (3) under circumstances making it unjust for the defendant to retain
the benefit without paying for it."   *Id.* (citing *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998,
1007 (Colo. 2008)).   However, "a party cannot recover for unjust enrichment . . . when an express
contract covers the same subject matter because the express contract precludes any implied-in-law
contract."   *Interbank Invs., LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814,816
(Colo. App. 2003).   There are two exceptions to this rule.   First, a party can recover on an unjust
enrichment claim where "the implied-in-law contract covers conduct outside the express contract
or matters arising subsequent to the express contract."   *Id.*   Second, a party can recover on an
unjust enrichment claim "when the party will have no right under an enforceable contract.   For
example, [unjust enrichment] may be allowed when an express contract failed or was rescinded."
*Id.* (internal quotations and citations omitted).

In their Motion, Defendants contend Plaintiffs' claim for unjust enrichment is precluded
because the EA, as an express contract, governs the employment relationship.   (Mot. at 9-12.)   In
their Response, Plaintiffs clarified their intention with regard to the unjust enrichment claim,

explaining that they merely asserted it as an alternative theory of relief to apply only in any of three circumstances: (1) The court finds the EA did not cover the work Plaintiff Powers performed between September 2012 (prior to executing the EA in October 2012) and February 2013 (the first time he was supposed to be paid a monthly stipend) (Resp. at 9-10); (2) The court finds Emcon is not an alter ego of FMNow and therefore, rules that the EA did not apply to Plaintiff Powers' employment with Emcon from August 2013 until February 2014 (Resp. at 10); and/or, (3) The court finds the EA did not cover the reimbursement of Plaintiff Powers' expenses at any time during his employment.   (*Id.*)   In their Reply, Defendants do not address Plaintiffs' alternative theories of liability but instead only briefly reiterate their argument that unjust enrichment cannot apply "because there is an express contract that covers [Plaintiff Powers'] employment and compensation at issue in this lawsuit."   (Reply at 9.)

Although a plaintiff cannot recover on conflicting theories of liability, a plaintiff can plead and pursue alternative theories of liability.   *See Robert W. Thomas and Anne McDonald Revocable Tr. v. Inland Pacific Colo., LLC*, No. 11-cv-03333-WYD-KLM, 2012 WL 2190852, at *5 (D. Colo. June 4, 2012) (denying the defendants' motion to dismiss based on finding that "[the plaintiff's] decision in the Amended Complaint to plead the breach of contract and unjust enrichment claims in the alternative is appropriate at this stage in the litigation.") (citing *Bachus v. Apishapa Land and Cattle Co.*, 615 P.2d 42, (Colo. App. 1980) (finding that the plaintiff could "proceed alternatively on his claim for unjust enrichment" in addition to breach of contract claim, since if the plaintiff's claim for assignment fails, he would have no right under an enforceable contract and may be able to recover for unjust enrichment); *Clyne v. Walters*, No. 08–cv–01646–

MSK–CBS, 2009 WL 2982842, at *3 (D. Colo.2009)).   The court finds Plaintiffs' alternative

theories of unjust enrichment against Emcon should proceed at this time.

On the other hand, Plaintiffs also assert this claim against the individual Defendants.   As

previously noted, the elements of unjust enrichment require that a defendant receive a benefit at

the expense of a plaintiff.   *Harris Group, Inc.*, 209 P.3d at 1205.   However, Plaintiffs do not set

forth any allegations indicating the individual Defendants benefitted, unjustly or otherwise, in an

individual capacity from Plaintiff Powers' work and/or employment.[4]   Thus, Plaintiffs have failed

to set forth a viable claim of unjust enrichment against the individual Defendants.

## 2.   Personal jurisdiction over individual Defendants

Plaintiffs have also asserted FLSA violations based on failure to pay (as opposed to

retaliation) against the individual Defendants.   The individual Defendants seek dismissal based

upon an lack of personal jurisdiction.

To determine whether personal jurisdiction is proper under the Constitution, a court first

looks to find minimum contacts with the forum state.   *See Int'l Shoe Co.*, 326 U.S. at 316.   To

establish minimum contacts, it is "essential ... that there be some act by which the defendant[s]

purposefully avail[ ] [themselves] of the privilege of conducting activities within the forum State,

thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253

(1958).   The minimum contacts standard can be met in two ways – by establishing either specific

or general jurisdiction.   *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *Helicopteros*

---

4 As discussed *infra*, the individual Defendants may be considered employers under the FLSA, at
least as the record currently stands.   However, such a status is limited to the context of Plaintiffs'
FLSA claim and does not apply to their state law claim for unjust enrichment.

*Nacionales de Colombia v. Hall,* 466 U.S. 408, 415 (1984).   Here, Plaintiffs contend the court has specific jurisdiction over the individual Defendants.

A court may assert specific jurisdiction over a nonresident defendant if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from the alleged injuries that arise out of or relate to those activities.   *OMI Holdings, Inc.*, 149 F.3d at 1090–91 (quoting *Burger King*, 471 U.S. at 472).   If such purposeful availment in the form of minimum contacts is shown, a court must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 113 (1987)).

The individual Defendants argue Plaintiffs failed to establish personal jurisdiction because they have not alleged the individual Defendants "purposefully directed any activities at Colorado residents in their individual capacities so as to confer specific jurisdiction. . . . . Personal jurisdiction cannot be based on mere ownership of stock in a company that transacts business within the state."   (Mot. at 8.)   Plaintiffs contend that the facts of the case directly give rise to an FLSA claim against the individual Defendants because they qualify as employers for purposes of the FLSA and, by doing business in Colorado, they purposefully availed themselves of the privilege of conducting activity within Colorado.   (Resp. at 5-6.)

Though they never call it by name, Defendants are relying on the fiduciary shield doctrine, which provides that a court cannot enjoy personal jurisdiction over an individual defendant if his only contacts with a state are in his business or corporate capacity.   N*ewsome v.*

11

*Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013). In *Newsome*, however, the court explained that

the Tenth Circuit has sometimes "failed to clarify whether the fiduciary shield doctrine is dictated

by federal due process (*i.e.*, whether it is integral to the minimum contacts test) or whether it only

exists, if at all, as a matter of state law." *Id.* The Tenth Circuit resolved this issue in the

*Newsome* decision, finding that the "fiduciary shield doctrine [] only exists as a matter of state

law." *Id.*

   This court recently explained that there is a dearth of case law in Colorado discussing the

fiduciary shield doctrine. *See Carskadon v. Diva Int'l, Inc.*, No. 12-cv-01886-RM-KMT, 2014

WL 7403237, at *5 (D. Colo. Feb. 26, 2014) ("The court is not able to locate any Colorado case

law discussing the fiduciary shield doctrine. As such, not only is the court unable to discern

whether Colorado recognizes the fiduciary shield doctrine, it also cannot be certain how Colorado

would apply the doctrine to the facts of this case."); *see also Carnrick v. Riekes Container Corp.,

et. al.*, No. 15-cv-01899-CMA-KMT, 2016 WL 740998, at *6 n.1 (D. Colo. Feb. 24, 2016) (same).

Because it is unclear whether Colorado courts would recognize the fiduciary shield doctrine, the

court would generally consider all of the individual Defendants' alleged contacts with Colorado,

even if undertaken on behalf of Emcon and/or FMNow. *Carnrick*, 2016 WL 740998, at *6 n.1;

*Carskadon,* 2014 WL 7403237, at *6 (citing *Cantrell v. Extradition Corp.*, 789 F. Supp. 306, 310

(W.D.Mo. 1992)). The court notes, however, in light of the nature of Plaintiffs' FLSA claim

against the individual Defendants, it seems likely the court should consider the alleged contacts

even if Colorado recognized the fiduciary shield doctrine.

   Plaintiffs contend the individual Defendants each qualify as an employer under the

provisions of the FLSA.   (Am. Comp. at 18; Resp. at 11-12.)   Pursuant to the FLSA, an employer

is broadly defined as "any person acting directly or indirectly in the interest of an employer in

relation to an employee."   29 U.S.C. § 203(d).   In *Robertson v. Bd. of Cnty. Comm'rs of the Cnty.*

*of Morgan*, 78 F. Supp. 2d 1142 (D. Colo. 1999), the court utilized the following test to determine

if an entity or individual is an "employer" under the FLSA:

> An employer under the Act is someone who: 1) has the power to hire and fire the
> employee; 2) supervises and controls the employee's work schedule or conditions
> of employment; 3) determines the rate and method of payment; and 4) maintains
> employment records.   No one factor is dispositive, but instead a court must
> consider the economic realities and the circumstances of the whole activity.

*Id.* at 1151 (internal quotations and citations omitted); *see also Baker v. Flint Eng'g & Constr. Co.*,

137 F.3d 1436, 1440 (10th Cir.1998).   Under this test, a corporate officer may be an employer

within the meaning of the FLSA (and thus jointly and severally liable along with the corporation)

if he or she exercises "'managerial responsibilities' and 'substantial control of the terms and

conditions of the [employer's] work . . . .'"   *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971–972

(5th Cir. 1984) (quoting *Falk v. Brennan*, 414 U.S. 190, 195 (1973)).   *See Thompson v. Real*

*Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("The FLSA imposes individual liability

on 'any person acting directly or indirectly in the interest of an employer in relation to an employee

. . . .' 29 U.S.C. § 203(d). Aside from the corporate entity itself, a company's owners, officers, or

supervisory personnel may also constitute "joint employers" for purposes of liability under the

FLSA.").

In the present case, the individual Defendants never address this test in either their initial

Motion or their Reply, nor do they challenge their classification as employers for FLSA purposes.

Instead, the individual Defendants state, in conclusory fashion, "[t]he fact that Plaintiffs allege []
Cocuzza and Michowski are statutory employers under the FLSA does not change the personal
jurisdiction analysis."  (Reply at 5.)   The court disagrees and does not find merit in their
argument that, because their contacts to Colorado were in their role as corporate officers, they
themselves were not doing business in Colorado so as to be subject to personal jurisdiction under
Colorado's long-arm statute.   Plaintiffs are not seeking to hold the individual Defendants
derivatively liable for acts performed by Emcon.   They are being sued for violations of a federal
statute, under which they are statutorily characterized as an employer and personally responsible
for any proven violations, because of their alleged substantial personal control over the terms and
conditions of a Colorado employee's work in Colorado.   Based upon the present record and the
arguments, Plaintiffs have made a *prima facie* showing of specific jurisdiction.[5]

**3.   Claims against Emcon**

**a.   Retaliation claims under the CWA and the FLSA**

The primary basis for Defendant Emcon's request to dismiss all claims against it is its
argument that in order to succeed on any claim, Plaintiffs must show that FMNow was the alter
ego of Emcon.   However, this contention is simply not accurate.   Plaintiffs' claims for retaliation
under the CWA and the FLSA are based upon alleged actions taken while Plaintiff Powers was,
according to Defendants, employed by Emcon.   (Mot. at 2.)   Plaintiff claims that his employment

5 The court further notes that in light of the fact that the individual Defendants' contacts with
Colorado, in whatever context, are relevant to the analysis of personal jurisdiction, *see supra*, the
alleged contacts the individual Defendants had with Colorado are sufficient to establish personal
jurisdiction, even aside from their designation as employers under the FLSA.

was terminated in retaliation for complaining to Emcon directors and officers about the failure to pay him wages that he contended he was due, and to reimburse his expenses.   (Am. Comp. at 17, 19-20.)   The parties may disagree regarding the precise wages Plaintiff Powers was owed but that does not change the basis of Plaintiffs' retaliation claims.   Though it was the President of FMNow that first informed Plaintiff Powers his employment was terminated, Emcon sanctioned this decision, ending his employment with Emcon, as evidenced by the email from Emcon's Director of Human Resources transmitting his termination letter and specifically relying on Mr. Mattei's decision.   Thus, to the extent Defendants request dismissal of Plaintiffs' retaliation claims under the CWA and the FLSA, Defendants' motion will be denied.

### b.   FLSA, CWA and Unjust Enrichment claims based upon failure to pay

Finally, Plaintiffs have also asserted claims against Emcon based upon their contention that Plaintiff Powers was not provided lawfully required compensation.   Emcon charges that each of these claims are more appropriately asserted against FMNow and therefore, it can only be liable for the same if FMNow is considered an alter ego of Emcon.

Notably, the determination as to whether a subsidiary is an instrumentality or alter ego of the parent company is primarily a question of fact that should be submitted to a jury.   *Luckett v. Bethlehem Steel Corp.*, 618 F.2d 1373, 1379 (10th Cir. 1980).   The relevant factors to consider are:

> (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of

15

legal formalities and the failure to maintain an arms-length relationship among
related entities; and (8) diversion of the corporation's funds or assets to
noncorporate uses.

*U.S. v. Van Diviner*, 822 F.2d 960, 965 (10th Cir. 1987).   No one factor is determinative in this

analysis.   *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1157 (D. Colo. 1990) ("[A]

variety of considerations are used to determine whether the corporate form should be

disregarded.").

Plaintiffs have set forth the following allegations to support their contention that FMNow

is an alter ego of Emcon.   Throughout the time period Plaintiff Powers was allegedly working for

FMNow under the EA, he performed services for both FMNow and Emcon, and no effort was

made to differentiate the work he performed for each company.   (Am. Comp. at 6.)   Defendant

Cocuzza, Emcon's CEO, participated in Plaintiff Powers' final interview before he was initially

hired by FMNow.   (Am. Comp. at 4.)   He was issued business cards by both FMNow and

Emcon, each listing his title as Director of Construction Services.   (Am. Comp. at 6.)   Plaintiff

Powers negotiated single contracts on behalf of both companies.   (Am. Comp. at 9.)   In July

2013, prior to being placed on Emcon payroll, he performed an analysis of Emcon's internal

business processes with recommendations for ways to improve the company's structure and

processes.   (*Id.*)   When FMNow was unable to pay Plaintiff Powers' monthly compensation, he

was placed on Emcon's payroll but it does not appear, nor do Defendants argue, that Plaintiff

Powers' job duties or any other aspects of his employment changed.   (Am Comp. at 6.)   Upon

being moved to Emcon's payroll, his Employment Eligibility Verification form for Emcon listed

FMNow as his employer.   (Am. Comp. at 7.)   Emcon placed a copy of Plaintiff Powers'

non-compete agreement with FMNow into his personnel file at Emcon but did not request that he execute a separate agreement for Emcon.   (*Id.*)   After Emcon started paying Plaintiff Powers' monthly stipend, he continued to submit his expense statements to FMNow and on the occasions such statements were paid, they were paid by Emcon.   (Am. Comp. at 7, 10.)   He also continued to work out of FMNow's Englewood, Colorado office and continued to use an FMNow signature block and email address.   (Am. Comp. at 7.)   FMNow continued to list Plaintiff as an employee through at least December 2013, even though he was placed on Emcon's payroll in August 2013. (Am. Comp. at 10.)

Additionally, Emcon manages the server on which FMNow's business is operated, and the two companies worked together to develop the FMNow software, which could not be run without the Emcon server.   (*Id.*)   FMNow promotes that it has a vendor network of 60,000 vendors, however, that network is actually Emcon's and Emcon promotes the same number of vendors. (Am. Comp. at 7-8.)   FMNow also promotes Emcon's customer service representatives and 24/7 call-in support, as well as listing Emcon's customers as its own sample customers, in marketing materials and when making sales presentations.   (Am. Comp. at 8.)   Emcon also paid for technology, software development, operational consulting, and improvements on behalf of FMNow.   (*Id.*)

In addition to Plaintiff Powers, Emcon pays the salaries of at least three other FMNow employees.   (*Id.*)   Several employees had both Emcon and FMNow email addresses and email communications referred to the companies as "FMNow/Emcon."   (Am. Comp. at 8-9)   Emcon assigned its software developers to work on FMNow projects and on occasion, directed the work

17

of some FMNow employees.   (Am. Comp. at 8.)

Finally, and significantly, even though Plaintiff Powers was on Emcon's payroll and Defendants contend that he was an employee of Emcon from that point forward, it was FMNow's President, Mr. Mattei, who terminated his employment.   (Am. Comp. at 10-12.)   Following Mr. Mattei's decision to do so, Emcon's Director of Human Services sent Plaintiff Powers a letter *via* email stating, "In accordance with your conversations with Jon Mattei, attached is an employment termination letter."   (Am. Comp. at 12.)

Additionally, to the extent Plaintiffs must show that "adherence to the corporate fiction would sanction a fraud, promote injustice or lead to an evasion of legal obligations," *see* Reply at 8, the court finds that avoiding contractual obligations related to employee compensation satisfies the same.

Based on this evidence, the court finds Plaintiffs have sufficiently alleged, at this stage of the proceeding, that FMNow was the alter ego of Emcon.

Accordingly, it is

**ORDERED** that Defendants' "Motion to Dismiss" (Doc. No. 28) is **GRANTED in part and DENIED in part.**   Plaintiffs' claim of unjust enrichment against Defendant Michowski and Cocuzza is dismissed.   The remainder of Plaintiffs' claims against Defendants Emcon, Michowski and Cocuzza will proceed.

Dated this 22nd day of March, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge