IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–03006–KMT

WILLIAM POWERS,
MAP MANAGEMENT LLC, and
BLACK WIDOW LLC,

    Plaintiffs,

v.

EMCON ASSOCIATES, INC.,
MICHAEL COCUZZA, and
MICHAEL MICHOWSKI,

    Defendants.

## ORDER

This matter is before the court on Defendants' "Motion for Summary Judgment." (Doc. No. 86 ["Mot."].) Plaintiffs filed a Response (Doc. No. 93 ["Resp."]), to which Defendants replied. (Doc. No. 100.)

### Facts

Defendant Emcon Associates, Inc. ("Emcon") is a New Jersey corporation. (Doc. No. 24 at 2; Doc. No. 58 at 2.) Defendant Michael Cocuzza is a co-founder and CEO of Emcon. (Doc. No. 24 at 3; Doc. No. 58 at 3.) Defendant Michael Michowski is a co-founder and Chief Administrative Officer of Emcon. (Doc. No. 24 at 3; Doc. No. 58 at 3.)

Former Defendant FMNow LLC ("FMNow") was a Colorado limited liability company formed on June 13, 2012. (Doc. No. 93-1.) FMNow's initial Operating Agreement indicates

that Defendants Cocuzza and Michowski each contributed $12,500.00 of capital and each held 16.667% (one-sixth) ownership interest. (Doc. No. 86-3; Doc. No. 93-1 at 40.)[1]  Emcon paid for the capital contributions of both individuals. (Doc. No. 93-3 at 95-97.)[2]  Three years later, Defendants Michowski and Cocuzza each issued separate Notes Receivable to Emcon that they contend include their capital contributions. (Doc. No. 91-3.)  Both Notes Receivable are dated January 1, 2015, after this litigation began. (*Id.*)

FMNow and Plaintiff Powers executed an Employment Agreement ("EA") on October 15, 2012. (Doc. No. 86-2.)  Plaintiff Powers also completed a 1099 Form for 2013. (Doc. No. 86-6.)  Throughout the EA, Plaintiff Powers is referred to as an "employee" and is designated as "Director and Business Analyst, Industrial Sector, a management position." (*Id.* at 1.)  The EA contains the following provisions:

> [Employees'] responsibilities may change from time to time, and Employer may assign such other duties as it deems appropriate in its sole discretion.
>
> Employee agrees to abide by all Company policies as the same may be prescribed from time to time by Company and furnished in writing to the Employee.
>
> Employee shall be entitled to participate in the then applicable 401k program immediately upon establishment of such program by the employer.
>
> Employee is eligible to participate in Employee Stock Option Program [] to be established in calendar 2013.
>
> In the event the Employee shall resign from the Company or no longer be employed by the Company for any reason other than termination by the Company without cause, prior to the end of a two year period commencing with the signing

---

[1] Former Defendants Patricia Moscarelli and Jon Mattei, as well as Kathleen Mattei, held the remaining 4/6 interest in FMNow. (Doc. No. 86-3; Doc. No. 93-1 at 40.)

[2] When citing deposition testimony, the court uses the page references in the original deposition transcript.

> of the agreement, then all Options which may have vested in Employee on or before that time shall lapse and be of no further force or effect.
>
> In the event the Company is purchased, merges or sells substantially all of its assets in exchange of consideration valued at twenty-five million dollars ($25,000,000.00) or more[,] then the vesting schedule for Employees' initial (percent) Options Interest is waived and the entire remaining (percentage) shall vest immediately.
>
> Both parties acknowledge that Employee is an at-will employee and has no vested rights to employment.
>
> Following the termination of this Agreement without cause, Company will continue to pay Employee for the duration of 12 months full earned compensation on all accounts sold at the date of termination.
>
> **THIS AGREEMENT DESCRIBES THE BASIC LEGAL AND ETHICAL RESPONSIBILITIES THAT EMPLOYEE IS EXPECTED TO OBSERVE AS AN EXECUTIVE OR MANAGERIAL EMPLOYEE.**

(*Id.* at 1, 2, 5, 6, 9.) (emphasis in original.) Additionally, the EA also includes a non-compete agreement prohibiting Plaintiff Powers from working for a competing business located within the United States for a period of two years following the termination of his employment. (*Id.* at 4-5.)

FMNow filed a Statement of Dissolution with the Colorado Secretary of State on September 2, 2015. (Doc. No. 86-1) Initially, Plaintiffs also named as Defendants in this action FMNow, Jon Mattei, President of FMNow, and Patricia Moscarelli, former President of FMNow. (Doc. No. 24.) Prior to the dissolution of FMNow, Plaintiffs reached a settlement with Defendants FMNow and Mattei. (Doc. Nos. 40, 42; Doc. No. 86-12 at 3.)[3] The settlement agreement included the following reservation of rights: "Nothing in this Agreement and Release shall apply to any of the other defendants in this Lawsuit. Powers contends that FMNow is an alter ego of Emcon in the Lawsuit (and FMNow/Mattei disagree). Nothing in this Agreement

---

[3] Plaintiffs voluntarily dismissed Defendant Moscarelli. (Doc. Nos. 43, 44.)

and release shall be construed as an admission that takes a position against Powers's Interest or contentions in the Lawsuit." (Doc. No. 95 at 3.)

## Standard of Review

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. Moreover, because

Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

**Analysis**

**1. Emcon's alter ego status**

Though not a model of clarity, Emcon's first basis for summary judgment appears to be an argument that Plaintiffs' Amended Complaint based their alter ego theory of liability solely on the allegation that Emcon was FMNow's parent corporation. (Mot. at 9.) Emcon states that "a lack of ownership of a controlling interest generally precludes application of the veil piercing doctrine." (*Id.* at 9.) Thus, according to Emcon, if it can show FMNow does not hold a controlling interest in FMNow, Plaintiffs' alter ego theory fails. (*Id.* at 9-10.) Emcon makes a similar argument related to sister corporations who share common ownership. According to Emcon, it does not share common ownership with FMNow but presuming it did, status as sister corporations is not sufficient to pierce the corporate veil. (*Id.* at 10.)

In asserting these arguments, Emcon ignores the well-established law related to determining whether one corporation is an alter ego of another. Determining whether a corporation is an alter ego is not limited to the status of parent-subsidiary or sister corporations. Instead, the trier of fact must consider the following factors:

> (1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate corporate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses.

*U.S. v. Van Diviner*, 822 F.2d 960, 965 (10th Cir. 1987). Further, no one factor is determinative in this analysis. *Newport Steel Corp. v. Thompson*, 757 F. Supp. 1152, 1157 (D. Colo. 1990) ("[A] variety of considerations are used to determine whether the corporate form should be disregarded.").

Emcon does not discuss the plethora of evidence in the record relevant to a consideration of these factors and thus, it is unnecessary for the court to do so here. Instead, Emcon limits its argument to its contention that Plaintiffs based their "theory of recovery [on] allegations that Emcon was FMNow's parent company." (Mot. at 10.) The court disagrees.

Plaintiffs have never limited their theory of recovery on establishing such a parent-subsidiary relationship. In Plaintiffs' Amended Complaint, they repeatedly allege FMNow is the alter ego of Emcon and/or assert an alter ego theory of liability and do not premise those allegations solely on establishing Emcon is the parent corporation of FMNow. (Doc. No. 24 at 14, 21, 22, 23.) Additionally, in correspondence dated August 5, 2016, Plaintiffs' counsel

responded to assertions by Emcon's counsel that there is no documentation showing that Emcon holds a controlling interest in FMNow, stating:

> [The lack of such documentation to date does not] alter the fundamental argument pursuant to which we believe Emcon is liable under Mr. Powers' Employment Agreement, which is that the two companies were alter egos and Emcon is properly held liable for FMNow's breach of the agreement on that basis. . . . As a result, any agreement to withdraw the allegation of a parent company relationship would do nothing to change our fundamental theory of liability against Emcon.

(Doc. No. 86-11 at 1.) Moreover, in light of the previous briefing related to and Order ruling on Defendants' Motion to Dismiss, in which Plaintiffs' alter ego theory and the factors relevant to the same were addressed at length, *see* Doc. No. 54 at 15-18, it is unclear why Emcon now argues Plaintiffs' claims rely on establishing a parent-subsidiary relationship.  In any event, Emcon's argument is without merit.

**2. Expert Testimony**

As noted, Emcon fails to dispute or even address the majority of the evidence Plaintiffs have presented relevant to the alter ego determination.  Instead, as its next basis for summary judgment, it simply argues Plaintiffs cannot establish their alter ego theory because they did not depose former-Defendant Mattei and Plaintiffs are not offering expert testimony.  Notably, Emcon does not cite to any case law supporting their assertion that expert testimony is required to establish an alter ego theory, nor is the court aware of any such requirement.  Further, while Mr. Mattei and an expert witness may have offered testimony relevant to Plaintiffs' alter ego theory, Plaintiffs have produced a significant amount of evidence relevant to the determining factors.

### 3. Plaintiffs' Release of FMNow/Mattei

Defendants argue Plaintiffs' claims against them are precluded based upon Plaintiffs' release of FMNow/Mattei. (Mot. at 12-14.) "A release is the relinquishment of a vested right or claim to the person against whom the claim is enforceable." *Truong v. Smith*, 28 F. Supp.2d 626, 630 (D. Colo. 1998) (citing *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989); Restatement (Second) of Contracts § 284 (1981)). Agreements exculpating one contracting party from liability have been held enforceable. *Id. (*citing *Heil Valley Ranch, Inc. v. Simkin*, 784 P.2d 781, 784 (Colo. 1989) (considering contract provision exculpating party from liability for negligence)). Further, a release is an agreement to which general contractual rules of interpretation and construction apply. *Id.* (citing *Rocky Mountain Ass'n of Credit Mgmt. v. Hessler Mfg. Co.*, 553 P.2d 840, 842 (Colo. 1976)).

Plaintiffs' settlement agreement included a full and final release of claims against former Defendants FMNow and Mattei. (Doc. No. 95.) However, the agreement also included a reservation of rights preserving Plaintiffs' claims against the remaining Defendants. (*Id.* at 3.) Defendants reason that presuming FMNow is the alter ego of Emcon, as Plaintiffs contend, then just as the alter ego doctrine treats corporations as one for purposes of imposing liability, a release of FMNow from liability also releases Emcon from the same. (*Id.*) In support of this contention, Defendants rely on various cases that cite to this basic principal of corporate law, however, none of those cases indicate that in releasing one corporation the plaintiff therein reserved its rights against the other. *See M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1489-90 (9th Cir. 1983); *Morris v. Penn Mut. Life Ins. Co.*, No. CIV. A. No. 87–7063, 1989 WL 14063, at \*2 n.2 (E.D. Penn. Feb. 21, 1989); *Hydro Air of Conn., Inc. v. Versa*

8

*Tech., Inc.*, 99 F.R.D. 111, 113 (D. Conn. 1983); *Fuls v. Shastina Props., Inc.*, 448 F. Supp. 983, 989 (N.D. Cal. 1978).

Defendants are critical of Plaintiffs' reliance on *Meyer v. Stern,* 599 F. Supp. 295 (D. Colo. 1984), in which this court applied state law to find "a release with express provisions reserving the right to sue other tort-feasors will be given the effect intended by the parties." *Id.* at 297. The court explained, "'[W]hen from the very nature of the transaction the intent to preserve the right to sue other tort-feasors is apparent, the intent of such agreement will be given the same effect as if it were a pure covenant not to sue.'" *Id.* at 297-98 (quoting *Farmers Elevator Co. of Sterling v. Morgan*, 474 P.2d 617, 618 (Colo. 1970)).

Defendants distinguish *Meyer* because it was based upon state law, *see id.* at 297 ("Both parties agree that Colorado law should be applied in determining liability"), and involved actions in tort, rather than contract and statute. (Reply at 8-9.) Although the underlying reasoning is sound, the court recognizes the distinguishing characteristics of *Meyer.*

In the present case, the settlement with FMNow and Mattei did not provide Plaintiffs with the full damages they seek for their claims. (Resp. at 11 n.8.) As Emcon concedes, under Plaintiffs' alter ego theory, Emcon would be equally liable for those damages. In the Settlement Agreement, Plaintiffs specifically and unambiguously reserved their right to continue with their claims against the remaining Defendants. Emcon has not presented any case law indicating that a reservation of rights contained within a release of claims does not apply to an alter ego just as it does to other parties. *See, cf., Kennedy v. Ford Motor Co.*, 80 F. App'x 100, 103-04 (10th Cir. 2003) (noting the plaintiff could have preserved her fraud claims by including a reservation of rights provision in her settlement agreement); *Advantage Props., Inc. v. Commerce Bank, N.A.*,

No. 00-3014, 2000 WL 1694071, at *3 (10th Cir. Nov. 13, 2000) (finding that the plaintiff-corporation's president and sole stockholder who, though not a party to the lawsuit, participated in the negotiation of a settlement agreement was barred from asserting individual claims because he could have preserved such claims in the agreement); *Schroeder v. Allstate Ins. Co.*, No. 09–cv–00671–JLK–MJW, 2009 WL 1387090, at *1 (D. Colo. May 18, 2009) (noting the plaintiff could have included a reservation of rights in release to preserve claims); *Truong*, 28 F. Supp. 2d at 631 (denying individual defendant's motion to dismiss Title VII claims; the defendant relied on a release contained within the plaintiff's settlement agreement with Defendant HealthFirst P.C. but the court found the agreement included a reservation of rights to pursue claims against the defendant in his individual capacity). Accordingly, Defendants' request for summary judgment based on Plaintiffs' previous settlement and release of claims against FMNow and Mattei is denied.

**4. Plaintiff Powers' Employment Status**

Emcon contends Plaintiff Powers was an independent contractor for FMNow and therefore, he cannot recover under the Colorado Wage Act ("CWA") or the Fair Labor Standards Act ("FLSA"). (Mot. at 14-15.) The CWA defines an employee as "any person . . . performing labor or services for the benefit of an employer in which the employer may command when, where, and how much labor or services shall be performed." Colo. Rev. Stat. § 8-4-101(5). Under the FLSA, an employee is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "Employ" means to "suffer or permit to work." 29 U.S.C. § 203(g). To determine whether an individual is an employee for purposes of the FLSA, the court must apply the economic realities test, which focuses on "whether the individual is economically dependent on

the business to which he renders service." *Doty v. Elias*, 733 F.2d 720, 722–23 (10th Cir. 1984).

The Tenth Circuit has set out six factors for courts to consider in performing this test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business.

*Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).[4]  Other courts of appeals have suggested further factors that might be relevant to the inquiry, including "whether the 'premises and equipment' of the employer are used for the work." *Torres–Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997).

Once findings of fact are made regarding the factors above, the court must decide, as a matter of law, whether the individual is an "employee" under the FLSA. *Baker,* 137 F.3d at 1440.  No single factor is dispositive; instead the Court must use a totality-of-the-circumstances approach. *Id.* at 1441.

In asserting Plaintiff Powers was an independent contractor, Emcon relies on the fact Plaintiff Powers executed a 1099 rather than a W-2 Form, he described his status on a mortgage financing document as a "1099 employee," and FMNow issued payments to Plaintiff Powers' limited liability companies, rather than to him directly. (Mot. at 14-15.)  However, this evidence is of little relevance in determining Plaintiffs' employment status.

> The Court's inquiry into the employment relationship "is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Henderson v. Inter–Chem Coal Co.*, 41 F.3d 567, 570 (10th Cir. 1994), citing *Dole v. Snell*, 875 F.2d 802, 804 (10th Cir. 1989). Instead, the economic realities of the relationship govern, and "the focal point is

---

[4] Because the economic realities test sufficiently encompasses the CWA's definition of employee, the court will limit its direct analysis to the FLSA definition.

> whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself." *Id.* Thus, "an agreement between [an] employer and a worker designating or labeling the worker as an independent contractor is not indicative of the economic realities of the working relationship and is not relevant to the analysis of the worker's status." Administrator's Interpretation No. 2015-1, The Application of the Fair Labor Standards Act's "Suffer or Permit" Standard in the Identification of Employees Who Are Misclassified as Independent Contractors (July 15, 2015), available at https://www.dol.gov/whd/workers/Misclassification/AI-2015_1.pdf ("AI 2015-1"). *See, e.g., . . . Robicheaux v. Radcliff Material, Inc.,* 697 F.2d 662, 667 (5th Cir. 1983) (explaining that "[a]n employee is not permitted to waive employee status," and affirming that welders were employees despite having signed independent contractor agreements); *Olson v. Star Lift Inc.*, 709 F. Supp. 2d 1351, 1356 (S.D. Fla. 2010) (worker's receipt of Form 1099-MISC from employer does not weigh in favor of independent contractor status).

*Hugler v. Foreclosure Connection, Inc.*, No. 2:15-cv-00653-DAK, 2017 WL 2168202, at *11 (D. Utah May 8, 2017).

The law is clear that in determining an individual's employment status, the inquiry is focused on the parties' relationship. *Id.* However, the court notes that the EA repeatedly refers to Plaintiff Powers as an "employee" and never refers to him as an "independent contractor." (Doc. No. 86-2.) "Though an employer's self-serving label of workers as independent contractors is not controlling, an employer's admission that his workers are employees covered by the FLSA is highly probative." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988); *see also Hugler*, 2017 WL 2168202, at *11.

Further, applying the factors relevant to the economic realities test does not support a finding that Plaintiff Powers was an independent contractor. FMNow exhibited a significant amount of control over Plaintiff Powers' employment. The EA set forth seven general areas of responsibility and FMNow possessed sole discretion to assign additional responsibilities. (Doc. No. 86-2 at 1.) Additionally, the EA contained a non-compete agreement applicable for two

years following the termination of his employment and prohibited Plaintiff Powers from pursuing a competitive business while still employed by FMNow.  (*Id.* at 5-6.)  During his employment and one year thereafter, Plaintiff Powers was prohibited from soliciting, inducing, recruiting or causing another FMNow employee to terminate their employment for the purpose of becoming associated with a competitor.  (*Id.* at 6.)  Finally, Plaintiff Powers was required to abide by all FMNow policies.  (*Id.* at 1.)

With regard to Plaintiff Powers' opportunity for profit or loss, he was eligible to participate in the "Employee Stock Option Program" and the 401k program when established. (*Id.* at 2.)  Plaintiff Powers also retained said options upon leaving FMNow's employment if it occurred two years after the contract was executed.  (*Id.*)  Further, if FMNow terminated Plaintiff Powers without cause, it was required to provide him 12 months' compensation.  (*Id.* at 6.)  As to the permanence of the working relationship, Plaintiff Powers was an at-will employee and the Employment Agreement did not place a time limit on his employment.  (*Id.* at 2.)

In considering the degree of skill required, the court notes the EA specifically states that FMNow was hiring Plaintiff Powers for "a management position" and that the EA sets forth the "basic legal and ethical responsibilities that Employee is expected to observe as an Executive or Managerial Employee."  (*Id.* at 1, 9.)  The EA also notes that his position "requires considerable responsibility and trust."  (Id. at 2.)

The record also indicates Plaintiff Powers did not perform work for any other companies while working for FMNow and/or Emcon.  (Doc. No. 93-9 at 2-3.)  Additionally, it appears Plaintiff Powers was dependent upon his employment with FMNow for his livelihood as

13

his termination was the result of requesting a loan from Mr. Cocuzza due to his unpaid compensation and expense reimbursement from FMNow. (Doc. No. 93-9 at 3.)

A trier of fact could make findings as to several of the factors of the economic realities test that would support the legal conclusion Plaintiff Powers acted as an employee of FMNow. Thus, Defendants are not entitled to summary judgment against Plaintiffs' claims under the FLSA and the CWA. *See Rojas v. Westco Farmers, LLC,* No. 15–cv–0168–WJM–KLM, 2016 WL 8540843, at *3 (D. Colo. June 14, 2016); *see also Herr v. Heiman*, 75 F.3d 1509, 1513 (10th Cir. 1996) ("Under the [FLSA], even though the question of whether a worker is an independent contractor or an employee is a question of law, the existence and degree of each factor is a question of fact." (internal quotations omitted)).

Therefore, it is

**ORDERED** that Defendants' "Motion for Summary Judgment" (Doc. No. 86) is **DENIED** in its entirety.

Dated this 14th day of September, 2017.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge